OPINION
{¶ 1} This postconviction appeal arises after Appellant's jury conviction on murder charges with a firearm specification. Appellant, Matthew J. Lallathin, asserts ineffective assistance of counsel, alleging that his trial counsel failed to file a motion to suppress Appellant's recorded police interviews. Appellant asserts that this failure on counsel's part was error since he was a minor; his Miranda waiver was invalid; he was intimidated by the investigating officers; and he was denied the opportunity to see or speak with his father or a lawyer.
 {¶ 2} The trial court provided a full evidentiary hearing on these issues and found Appellant's testimony lacking in credibility. Appellant now appeals the trial court's decision denying him postconviction relief.
 {¶ 3} The underlying facts of the offense are taken from the original appeal of this matter, as follows:
 {¶ 4} "On September 5, 2001, Lallathin was a fifteen year-old boy who lived with his father. That day, Lallathin was home sick from school. Even though he was not yet sixteen and did not have a license, he took the keys to his grandfather's Ford Bronco in order to go for a drive. He also took with him a semiautomatic pistol which was kept at his father's house. On the way home, Lallathin was driving on a paved road which turned into a dirt road. He hit the dirt portion of the road at approximately sixty miles per hour, lost control of the Bronco, and flipped it on its side. After the Bronco flipped, Lallathin picked the gun up and put it in his pocket.
 {¶ 5} "The victim drove by after the accident and stopped to make sure Lallathin was okay and unsuccessfully tried to help Lallathin flip the Bronco back onto wheels. Next, the victim turned to walk toward his truck to call for help, Lallathin pulled the gun from his pocket and flipped the safety off. After this Lallathin blacked out. When he came to, he was lying on the ground and the gun was back in his pocket. He got up and realized the victim was lying in the road, bleeding. Lallathin ran to him and checked his pulse. He then drug [sic] the victim behind the Bronco to get him out of the road. Lallathin took the victim's truck and drove to a nearby store where he called 911. He reported his accident and that a man was dead, possibly shot. * * *." State v. Lallathin, 7th Dist. No. 229, 2003-Ohio-3478, ¶ 3-4.
 {¶ 6} The Noble County Juvenile Court bound Appellant over to the adult general division of the Noble County Court of Common Pleas, and the Noble County grand jury indicted Appellant on one count of murder with a firearm specification.
 {¶ 7} Appellant's case proceeded to jury trial on April 8, 2002. At trial, Appellant's counsel's main argument was that the state could not prove the essential elements of its case since Appellant blacked out at the scene. Thus, the state could not establish that he purposefully killed the victim. Notwithstanding counsel's arguments, the jury found him guilty of murder with a firearm specification, and Appellant was sentenced to eighteen years to life in prison. He appealed, and this Court affirmed his conviction and sentence. Lallathin, supra.
 {¶ 8} Appellant filed a petition for postconviction relief in the trial court. The trial court conducted a postconviction hearing and subsequently overruled Appellant's postconviction petition in its October 3, 2003, Journal Entry and issued Findings of Fact and Conclusions of Law. Appellant timely appealed this decision.
 {¶ 9} Based on the following reasons, Appellant's claimed error on appeal is overruled, and we affirm the decision of the trial court.
 {¶ 10} Appellant's sole assignment of error asserts:
 {¶ 11} "The Trial Court erred in overruling Appellant's petition for post conviction relief pursuant to Ohio Revised Code § 2953.21 and Criminal Rule 35. (Judgment Entry and Findings of Fact and Conclusion of Law, October 3, 2003)."
 {¶ 12} A person convicted of a criminal offense asserting a violation of his or her constitutional rights may petition the court that imposed the sentence for appropriate relief. R.C. §2953.21(A)(1)(a). A postconviction petition is not an appeal; instead, it is a civil action collaterally attacking a criminal judgment. State v. Steffen (1994), 70 Ohio St.3d 399, 410,639 N.E.2d 67. State postconviction review is not a constitutional right, and the petitioner only receives the rights established by statute. Id.
 {¶ 13} "A prisoner is entitled to postconviction relief under Section 2953.21 et seq., Revised Code, only if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution." State v.Lester (1976), 41 Ohio St.2d 51, 55, 322 N.E.2d 656, 70 O.O.2d 150, citing State v. Perry (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.
 {¶ 14} Postconviction review provides a narrow remedy because res judicata bars any claim that was or could have been raised at trial or on direct appeal. Perry, 10 Ohio St.2d 175, 180, 39 O.O.2d 189, 226 N.E.2d 104; State v. Duling (1970),21 Ohio St.2d 13, 254 N.E.2d 670, syllabus paragraph two. Since the instant petition was primarily founded on testimony de hors the trial court record, it was addressed via postconviction review.
 {¶ 15} "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues[.]" R.C. §2953.21(E). In the instant postconviction proceeding, the trial court conducted a full hearing on the matter, following which it denied Appellant's petition.
 {¶ 16} Appellant asserts that he was denied the effective assistance of trial counsel in violation of the Sixth Amendment. The U.S. and Ohio standards governing ineffective assistance of counsel claims are essentially the same. It consists of a twopart test to assess whether the claim requires a reversal:
 {¶ 17} "First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington (1984),466 U.S. 668, 687-689, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v.Thompson (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407.
 {¶ 18} Counsel's actions are presumed competent, and a defendant bears the burden to prove ineffective assistance of counsel. State v. Hamblin (1988), 37 Ohio St.3d 153, 155-156,524 N.E.2d 476.
 {¶ 19} Appellant asserts that his counsel was ineffective based on his counsel's failure to file a motion to suppress. Appellant claims such a motion was essentially required because Appellant was a minor at the time; his Miranda waiver was invalid; he was intimidated by the investigating officers; and he was denied the opportunity to speak with his parents or a lawyer. Following Appellant's postconviction hearing, the trial court determined that Appellant's motion to suppress had no support and would have been overruled. (Oct. 3, 2003, Findings of Fact and Conclusions of Law.)
 {¶ 20} The Sixth Amendment right to effective assistance of counsel is not violated by counsel's failure to pursue a motion to suppress unless the motion had merit. State v. Ratcliff
(1994), 95 Ohio App.3d 199, 206, 642 N.E.2d 31. The failure to file a motion to suppress can only be reversible error if it is prejudicial. Kimmelman v. Morrison (1986), 477 U.S. 365,106 S.Ct. 2574, 91 L.Ed.2d 305. But, "failure to file or pursue a motion to suppress, which could possibly have been granted,"
and that implicated critical defense issues, constitutes ineffective counsel. State v. Justice (1996), 10th Dist. No. 96APA05-616, 4, citing State v. Garrett (1991),76 Ohio App.3d 57, 600 N.E.2d 1130.
 {¶ 21} Appellant asserts that the trial court erred in implementing the incorrect standard since the trial court held: "Even had trial counsel filed a motion to suppress, there is no reasonable probability that such motion would have been granted, and hence no reasonable probability of a different outcome at trial." (Oct. 3, 2003, Findings of Fact and Conclusions of Law.) Appellant asserts, based on Justice and Garrett, supra, that the trial court failed to assess whether the motion to suppress "could possibly have been granted[.]" Garrett, supra.
 {¶ 22} The courts in Garrett and Justice were considering ineffective assistance of counsel arguments in direct appeals.Justice, 10th Dist. No. 96APA05-616; Garrett,76 Ohio App.3d 57, 600 N.E.2d 1130. The Garrett court reversed and remanded the matter to the trial court so a motion to suppress could be filed and considered. Id. at 63.
 {¶ 23} In the instant postconviction proceeding, however, the trial court conducted a full evidentiary postconviction hearing to assess the validity of Appellant's assertion that his recorded interviews were unlawful, and thus could form the basis for a motion to suppress. Appellant and three other witnesses testified on his behalf, and the State of Ohio presented two witnesses' testimony. (Sept. 3, 2003, Postconviction Petition Hearing ("Hearing") Tr.)
 {¶ 24} Once the trial court held an evidentiary hearing relative to Appellant's postconviction petition, a reviewing court should not overrule its findings if they are supported by competent and credible evidence unless it abused its discretion.State v. Mitchell (1988), 53 Ohio App.3d 117, 119,559 N.E.2d 1370. Abuse of discretion suggests that the court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. Thus, this Court must assess whether the trial court abused its discretion in denying Appellant's postconviction petition.
 {¶ 25} The success of Appellant's postconviction petition depended on the credibility of his own testimony since his postconviction testimony was truly the only new evidence at his hearing. Appellant's three other postconviction witnesses, his grandparents and his father, testified at his jury trial.
 {¶ 26} At his postconviction hearing, Appellant testified that at the time in question he was taken to the sheriff's office by his grandparents, but they were not permitted to sit with him during his questioning since they were not his guardians. Appellant claims he asked for his father, and he was advised that he was on his way. (Hearing Tr. p. 41.) Appellant was taken into an office with two detectives, a deputy, and Sheriff Smith. (Hearing Tr. p. 41.) At that point, Appellant claimed, "Sheriff Smith started yelling at me, trying to get me to confess, trying to scare me. He was cussing at me, saying that he already knew that I did the offense. He already had evidence that I did it. He told me to quit lying." (Hearing Tr. p. 42.) Appellant said that he was threatened with jail. (Hearing Tr. p. 42.) After Sheriff Smith left the room, the other detectives allegedly raised their voices to Appellant as well. (Hearing Tr. p. 45.)
 {¶ 27} In support of Appellant's petition, his grandmother testified that on the day she took him in for questioning, she heard the sheriff swearing in a loud voice and calling Appellant a liar. (Hearing Tr. p. 17.) However, neither Appellant's grandparents nor his father actually witnessed the questioning. (Hearing Tr. p. 25.)
 {¶ 28} Appellant's grandparents and his father, James, testified that they were denied in their request to see Appellant because deputies were "busy with him." (Hearing Tr. pp. 8, 12, 33.) There was testimony that Sheriff Smith also advised the grandparents that they were performing tests on Appellant. (Hearing Tr. p. 19.)
 {¶ 29} It is undisputed that Appellant signed a Miranda rights waiver on that first day at the sheriff's office after his rights were read to him. (Hearing Tr. p. 46.) Detective Hannum advised Appellant that he was going to turn on his tape recorder. (Hearing Tr. p. 45.) At that point Appellant claims that he asked if he needed a lawyer; but he was advised that they would get to that later. (Hearing Tr. p. 46.) Appellant claims he was subsequently read his Miranda rights and they started tape-recording. (Hearing Tr. p. 46.)
 {¶ 30} Appellant testified that he signed the Miranda waiver because he thought he would get to go home just like his prior encounter with the police. (Hearing Tr. p. 46.) No one ever advised him that he would be able to go home, but they never advised him that he was under arrest. (Hearing Tr. p. 54.)
 {¶ 31} According to Appellant, at one point the detective turned off the tape recorder; made Appellant strip off his clothes in the booking area; searched him; and made him put on an orange jumpsuit, which made Appellant afraid and embarrassed. Appellant testified that his interviewing and testing lasted three to four hours. (Hearing Tr. pp. 47, 50.)
 {¶ 32} Detective Steve Hannum also testified at the hearing. Detective Hannum stated that upon his arrival at the sheriff's office, Appellant was in his office with Deputy Smith and Detective Presnell. (Hearing Tr. p. 76.) Detective Hannum conducted Appellant's questioning after he read and explained Appellant his Miranda rights. (Hearing Tr. pp. 77, 78.) Appellant and Detective Hannum signed a Miranda rights statement at 3:15 p.m. on September 5, 2001. (Hearing Tr. p. 77.) When Detective Hannum initiated questions that were to be recorded, he again read Appellant his Miranda rights. (Hearing Tr. pp. 79-80.)
 {¶ 33} According to Detective Hannum, Appellant never requested an attorney, his parents, or his grandparents. (Hearing Tr. p. 80.) There were several interruptions during the interview, which lasted approximately 45-minutes to an hour. According to Detective Hannum, at one point Sheriff Smith opened the door to ask the detective a question. (Hearing Tr. p. 82.) At another point, Detective Warner conducted a gun residue test on Appellant's hands. (Hearing Tr. p. 82.)
 {¶ 34} On cross-examination, Detective Hannum denied that Appellant ever asked for his father, his grandparents, or an attorney on the first day of questioning. He stated that, "[i]f that young man would have asked for an attorney I would have stopped my questioning immediately." (Hearing Tr. pp. 91-92, 104.)
 {¶ 35} Sheriff Landon T. Smith also testified at the postconviction hearing. Smith testified that when he arrived at the Sheriff's Department on September 5, 2001, Appellant was already talking with the detectives and his grandparents were in the lobby. (Hearing Tr. p. 63.) Smith took the grandparents to his office and answered their questions concerning the incident. (Hearing Tr. p. 63.) They never asked Smith to see Appellant even after he advised them that the detectives were talking with him. (Hearing Tr. p. 63.)
 {¶ 36} Smith denied threatening Appellant, and Smith testified that he never spoke with Appellant after the incident. (Hearing Tr. p. 64.) Smith also denied swearing at or berating Appellant. (Hearing Tr. p. 65.)
 {¶ 37} Further, Smith stated that he spoke with Appellant's father on the day of the incident, and at no time did James ask to see Appellant that afternoon. Smith cannot recall whether James asked to see Appellant later that evening. (Hearing Tr. p. 65.) Smith does not believe that Appellant ever requested an attorney. (Hearing Tr. p. 68.)
 {¶ 38} Appellant testified that he repeatedly asked for his father, but was advised that he had not yet arrived. (Hearing Tr. p. 50.) Appellant was later taken into a courtroom for his detention hearing. He testified that he again asked for an attorney in front of the hearing judge, although apparently off the record. (Hearing Tr. pp. 51, 58.)
 {¶ 39} Appellant was later taken to a detention center for the night. The next day, Appellant was brought back to the sheriff's office.
 {¶ 40} Detective Hannum testified that Appellant was returned from the detention center on September 6, 2001, in order to attend a hearing that was later canceled. (Hearing Tr. p. 84.) Detective Hannum contacted James in order to discuss the gun, and James ended up being at the office at the same time as Appellant. (Hearing Tr. p. 84.) This led to the second recorded interview at which both Appellant and his father, James, signed the Miranda waiver. (Hearing Tr. p. 85.)
 {¶ 41} That second day, Appellant's father James accompanied Appellant and the investigating officers to the scene of the accident. (Hearing Tr. p. 34.) James consented and participated in the interview and reconstruction at the incident scene. (Hearing Tr. p. 34.) After the detective read the Miranda statement aloud, James and Appellant signed a document indicating that the second interview took place and again waiving Appellant's Miranda rights. (Hearing Tr. pp. 36-37.)
 {¶ 42} James indicated that: "They'd already talked to him so it didn't make any difference anyway." (Hearing Tr. pp. 34-35.) James also stated that the officers raised their voices to Appellant, but then he conceded that the questioning did occur on the side of a busy interstate highway and that the interview was being taperecorded. (Hearing Tr. p. 35.)
 {¶ 43} Appellant admits that he signed a second waiver of his Miranda rights. (Hearing Tr. p. 53.) He testified that he provided another recorded statement since he, "didn't think it would matter." (Hearing Tr. p. 53.)
 {¶ 44} Appellant's father never contacted an attorney on the first day that Appellant was at the sheriff's office, and he is uncertain if he tried to contact one on the following day. (Hearing Tr. p. 38.)
 {¶ 45} Contrary to Appellant's argument, Ohio law does not require a juvenile's parents to consent to his or her Miranda waiver. In fact, in construing the voluntariness of a juvenile's confession, courts are to look to the same "totality of the circumstances" factors, which include one's age, to be used when examining an adult's confession. In re Watson (1989),47 Ohio St.3d 86, 89-90, 548 N.E.2d 210. "[T]he fact that a juvenile is subject to police interrogation does not change the nature of the constitutional rights afforded to him." Id. at 89. The Ohio Supreme Court has concluded that upon considering the totality of the circumstances surrounding a juvenile's confession, a, "trial court can properly determine whether the juvenile appreciated his rights and voluntarily waived them in the absence of an interested adult or parent." Id. at 90.
 {¶ 46} The trial court in the instant cause concluded that Appellant knowingly and willingly waived his Miranda rights without improper coercion. Appellant signed two Miranda waivers. The trial court discredited Appellant's testimony to the effect that he felt coerced. Therefore, even if Appellant's trial counsel had moved to suppress, the trial court in reviewing his postconviction claim concluded that there was no reasonable probability that it would have been granted. (Oct. 3, 2003, Findings of Fact and Conclusions of Law.)
 {¶ 47} A reviewing court must defer to a trial court's assessment of the weight and credibility given to the evidence at a suppression hearing. State v. Moore (1998), 81 Ohio St.3d 22,31, 689 N.E.2d 1. In the instant cause, the conflicting evidence is clear. Appellant asserts that he requested counsel and that he was coerced into giving a statement. To the contrary, the detectives, the deputies, and the sheriff never heard any such request or coercion. Appellant says Sheriff Smith threatened him whereas no witness even saw Smith attempt to question Appellant.
 {¶ 48} Appellant also claims to have asked for counsel in the presence of the detention hearing judge, but his request was ignored. (Hearing Tr. pp. 51, 58.) There is apparently no record of such request. Further, based on his prior experience with the police, Appellant testified that he thought he would get to go home if he cooperated with the police. Yet he admits that no one ever told him that he would get to go home. (Hearing Tr. pp. 46, 54.) These facts tend to discredit Appellant's testimony.
 {¶ 49} The trial court denied Appellant's petition finding that his hearing testimony lacked credibility. Appellant's allegation that Sheriff Smith threatened him was not credible. The trial court also found that Appellant never requested his father's or grandparents' presence for questioning, and that Appellant never requested an attorney. His statement that he requested counsel before the tape recorder was turned on was deemed "wholly incredible." (Oct. 3, 2003, Findings of Fact and Conclusions of Law.) The trial court found that Appellant's assertion is contrary to Detective Hannum's testimony, Appellant's signed waiver, and his recorded statements. (Oct. 3, 2003, Findings of Fact and Conclusions of Law.) Further, the trial court noted that Appellant again waived his Miranda rights the next day in his father's presence and gave another statement. (Oct. 3, 2003, Findings of Fact and Conclusions of Law.)
 {¶ 50} In deferring to the trial court's judgment in assessing the weight and credibility of Appellant's testimony, we cannot find from this record that the trial court abused its discretion in denying Appellant's postconviction petition. It appears on review there was no possible way a motion to suppress could have been successful.
 {¶ 51} It is important to note that Appellant's trial counsel's trial strategy relied in part on Appellant's cooperation with the authorities. In his opening and closing trial statements, counsel referred to Appellant's lack of motive; the fact that he was in a significant automobile accident; that he never tried to cover up the incident; and that he blacked out at the scene. Counsel argued that Appellant suffered from traumatic disassociation on the date of the incident, and he had a medical expert explain the potential causes of traumatic disassociation, which include witnessing a traumatic event or a head injury from a motor vehicle accident. (Trial Tr. p. 542.)
 {¶ 52} Trial counsel also had Appellant's father and grandparents testify that Appellant was cooperative after the incident; that he never lied or hid his involvement; and that Appellant could not remember what happened that day.
 {¶ 53} Disregarding Appellant's statements, all of the other evidence presented at trial pointed toward Appellant. Appellant's recorded interviews describing the incident bolstered his claim that he "blacked out" and the fact that he was cooperative and could not have intentionally committed the crime. Again, counsel's actions are presumed competent, and a defendant has the burden to prove ineffective assistance of counsel. Hamblin,
supra, 37 Ohio St.3d 153, 155-156, 542 N.E.2d 476. As such, Appellant's trial counsel may have strategically decided not to file a motion to suppress in an attempt to establish that he could not have purposefully killed the victim. We must also note here that there is absolutely nothing in the record to indicate Appellant's claims of coercion were made known to his trial counsel.
 {¶ 54} Based on the foregoing, this Court hereby affirms the trial court's decision to deny Appellant's postconviction petition. Its findings that counsel was not ineffective for failing to file a motion to suppress are supported by competent and credible evidence. Mitchell, supra, 53 Ohio App.3d 117,119, 559 N.E.2d 1370. There is no evidence suggesting that the trial court's attitude was unreasonable, arbitrary, or unconscionable and we affirm the decision in full.
Donofrio, J., concurs.
Vukovich, J., concurs.