OPINION
{¶ 1} William J. Hennis appeals from the denial of his petition for postconviction relief.
 {¶ 2} In 2003, Hennis was found guilty by a jury of five counts of gross sexual battery and four counts of sexual battery. He was sentenced to an aggregate term of thirty years of imprisonment and was classified as a sexually oriented offender. The victim of the offenses was the ward of *Page 2 
Hennis's wife, Karen Hennis, whom the probate court had appointed guardian of the ward in October 1993. The victim's date of birth was April 22, 1985. She was not a blood relative of Hennis or his wife.
 {¶ 3} Hennis filed a pro se petition for postconviction relief. His attorney later filed a supplemental petition. The trial court denied the petition on res judicata grounds without a hearing. We reversed on appeal, concluding that the issues raised in the petition could not have been raised on direct appeal and therefore were not barred by res judicata. State v. Hennis, 165 Ohio App.3d 66, 2006-Ohio-41,844 N.E.2d 907. On remand, the trial court conducted a hearing on Hennis's petition and again denied the petition. The same judge presided over the trial and the hearing on the petition.
 {¶ 4} The trial court considered four issues raised in the petition for postconviction relief, which related to trial counsel's failure to explore the following evidentiary issues: 1) the effect of medical problems and Hennis's medications on his sexual desire and ability to get an erection; 2) an alleged discrepancy in the length and comprehensiveness of an audio-recorded conversation between Hennis and the alleged victim, which Hennis claims was indicative of tampering with the tape and a possible violation of Brady v. Maryland (1963),373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; 3) a witness who would have testified that it was virtually impossible that Hennis would have been alone with the alleged victim at the times cited in the indictment; and 4) discovery materials indicating that the victim was not in Hennis's custody at all of the times she claimed to have been abused.
 {¶ 5} Where the petition for postconviction relief claims trial counsel was ineffective, "the petitioner bears the initial burden * * * to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." State v. Jackson (1980), 64 Ohio St.2d 107, 111, 413 N.E.2d 819; *Page 3 State v. Norton (Aug. 6, 1999), Greene App. No. 99-CA-23. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Strickland v. Washington
(1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. With respect to Hennis's argument that trial counsel should have presented evidence about the effect of his medications on his ability to get an erection, the trial court noted that, at trial, Hennis had testified to taking medications but had also admitted that he had had intercourse with the victim. The court concluded that Hennis's trial testimony "seem[ed] to nullify his claim of any drug impairment." In light of Hennis's admission of sexual intercourse with the victim, the trial court could have reasonably concluded that trial counsel was not ineffective in failing to advance the contradictory argument that Hennis had been unable to achieve an erection.
 {¶ 6} Hennis also argued in his petition that trial counsel should have explored an alleged discrepancy in the length of an audio tape-recording of a conversation he had with the victim that was played at trial. Hennis claimed that the tape played at trial was 18 minutes long, but that the tape he received in discovery was 27 minutes long, and that the conversation itself had been about 50 minutes long. He asserted that the alleged discrepancies suggest "active misrepresentation of this conversation by the prosecution and an unexplored Brady violation." He also suggested that the prosecution's decision to drop a rape count after producing the tape in discovery "raises questions about the content of the remainder of the tape." In sum, he contended in his petition that "there clearly exists *Page 4 
an expanded version of this conversation that was reduced by the prosecution."
 {¶ 7} The trial court reviewed the tape that was provided to Hennis in discovery. The court found the tape was 25 minutes in length and concluded that there was "no evidence of any deletion or alteration" or any "sinister activity" associated with the tape. It concluded that the jury had been a position to evaluate the content of the tape and declined to speculate as to the reasons for any alleged "delay" in the recording without supporting evidence. (The reference to a delay appears to pertain to a section at the beginning of the tape on which no conversation was recorded). We agree with the trial court's assessment that Hennis's argument is highly speculative and that there is no credible evidence of tampering with the tape or of a Brady violation.
 {¶ 8} Hennis also argued that his counsel was ineffective in failing to offer evidence from Patty Wilson, who was fam iliar with the victim's grandfather's pattern of caring for the victim before and after school and would have allegedly testified that Hennis could not have had an opportunity to be alone with the victim. The trial court expressed skepticism about Wilson's ability to testify regarding Hennis's access to the victim because she was not a family member or a neighbor and did not live at the victim's home. The court noted that the testimony of the victim and the victim's mother would have contradicted Wilson's testimony, and that even the defendant had admitted to one instance of sexual activity with the victim. The court concluded that it had been reasonable trial strategy for trial counsel to elect not to call this witness. We agree. Given Wilson's lack of first-hand knowledge of the events at the Hennis home and the contradictory testimony from household members, trial counsel acted reasonably in not calling this witness.
 {¶ 9} Finally, Hennis contended that trial counsel did not sufficiently explore the *Page 5 
victim's claim, gleaned from pre-trial discovery, that he had molested her in 1991, two years before he had taken "custody" of her. Hennis claimed that this allegation, among others, called the victim's credibility into question because it was impossible for him to have molested her in 1991. Hennis also implied that the prosecutor acted deceitfully in amending the indictment with respect to the time of the offense in Count 1 from 1991 to 1993. The trial court concluded that the amendment of the indictment was proper and was not relevant to the claimed ineffective assistance of counsel. The record supports this conclusion.
 {¶ 10} Hennis concedes that his trial counsel attempted to demonstrate that the victim's claim that Hennis molested her in 1991 was false but that the trial court sustained the state's objection to this line of questioning. His claim of ineffectiveness is that his trial counsel "failed to proffer the relevance of the 1991 date from discovery." There was some evidence to suggest that Hennis had contact with the victim before she became a member of his household. Thus, the date he obtained custody did not necessarily correlate to the first opportunity for sexual contact. If trial counsel attempted to demonstrate a false accusation and was prevented from doing so by the court, it cannot be said that counsel's performance was unreasonable insofar as the outcome of the trial is concerned. On this record, we cannot say that the failure to preserve the trial court's ruling for appellate review was fatal to Hennis's direct appeal.
 {¶ 11} Hennis's assignment of error is overruled.
 {¶ 12} The judgment of the trial court will be affirmed. *Page 6 
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
William H. Lamb
Matthew Ryan Arntz
George A. Katchmer
 Hon. Douglas M. Rastatter *Page 1