[Cite as *State v. Robinson*, 2014-Ohio-1663.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

STATE OF OHIO

     Plaintiff-Appellee

v.

KENNETH ROBINSON

     Defendant-Appellant


Appellate Case No.    2013-CA-33

Trial Court Case No.   2011-CR-291


(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 18th day of April, 2014.

. . . . . . . . . . .

ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Greene County Prosecutor, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

RONALD P. KELLER, Atty. Reg. No. 0016176, 85 West Main Street, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

Defendant-Appellant, Kenneth Robinson, appeals from the Greene County Court of Common Pleas decision overruling his petition for postconviction relief, in which Robinson requested permission to withdraw his guilty plea and have his conviction vacated due to alleged ineffective assistance of counsel. For the reasons outlined below, we affirm the judgment of the trial court.

### Facts and Course of Proceedings

On May 27, 2011, Robinson was indicted on one count of engaging in a pattern of corrupt activity, one count of conspiracy to commit engaging in a pattern of corrupt activity, two counts of conspiracy to trafficking in marijuana, two counts of complicity to trafficking in marijuana, two counts of trafficking in marijuana, two counts of possession of marijuana, four forfeiture specifications, and one firearm specification. At his arraignment, Robinson pled not guilty to the charges and later filed a motion to suppress. Robinson was represented by Attorney Anthony VanNoy.

A hearing on Robinson's motion to suppress was scheduled for November 3, 2011. On the day of the hearing, the parties were able to successfully negotiate a plea agreement and moved forward with a plea hearing instead. Pursuant to the plea agreement, the State agreed to dismiss both possession counts, the engaging in a pattern of corrupt activity count, and the firearm specification. In exchange, Robinson agreed to plead guilty to the remainder of the charges and forfeit the property identified in the four forfeiture specifications. There was no agreement with respect to sentencing.

Prior to Robinson entering his guilty plea, the trial court confirmed the terms of the plea agreement and engaged in a thorough Crim.R. 11 plea colloquy. In addition, the trial court advised Robinson that he was facing a maximum of 24 years of imprisonment and a fine of $55,000, of which at least $12,500 but not more than $25,000 would be mandatory. The trial court also explained that his driver's license could be suspended for a period between six months and five years. After Robinson provided satisfactory responses to all of the trial court's questions regarding the voluntariness and understanding of his plea, the trial court accepted Robinson's guilty plea.

On January 11, 2012, the trial court sentenced Robinson to a total prison term of six years. Attorney VanNoy filed an appeal on behalf of Robinson on February 17, 2012, but withdrew the appeal a month later. Thereafter, Robinson obtained new defense counsel and filed a petition for postconviction relief on grounds that VanNoy provided ineffective assistance. Despite the State's objections, the trial court permitted a hearing on the petition. At the hearing, Robinson; his wife, Charisse Robinson; and Attorney VanNoy each testified.

Robinson's Testimony

Robinson testified that he only had two brief meetings with VanNoy prior to entering his guilty plea. He claimed that on the day of the hearing, VanNoy told him the motion to suppress "wasn't looking so good" and then presented the State's plea offer to him. Trans. (Mar. 6, 2013), p. 13, ln. 24. According to Robinson, VanNoy said the plea offer was a good deal, and he promised Robinson would not receive more than two years in prison. Initially, Robinson testified that VanNoy told him he had no chance of probation, but later in the

proceedings, he claimed that VanNoy said he had "a good shot and a good chance of getting probation." *Id.* at p. 17 ln. 2-3. Robinson also claimed that VanNoy told him it would be in his best interest to tell the judge that no one promised him anything to induce his plea.

7        Robinson further testified that he went forward with pleading guilty based on VanNoy's promise of two years in prison. However, he also admitted to reading the portion of the plea form that stated no promises were made to induce his guilty plea before signing the form. Robinson also claimed that he felt rushed in making his decision to plead guilty. However, he later admitted to saying that he felt "comfortable" with pleading guilty at the plea hearing after the trial court asked if he felt rushed. *Id.* at p.37, ln. 9-21.

8        In addition, Robinson testified that a man named Denny Hunter recommended VanNoy's services, and that Hunter paid VanNoy $15,000 to represent him. According to Robinson, Hunter was a person of interest to the Greene County Agencies for Combined Enforcement Task Force (ACE), which offered Robinson a deal if he would "get information on" Hunter. Trans. (Apr. 5, 2013), p. 18, ln. 25. Robinson claimed that he discussed this option with VanNoy, and that VanNoy discouraged him from working with ACE given that Hunter had paid his legal fees. Furthermore, Robinson testified that VanNoy failed to mention anything about a conflict of interest.

9        On cross-examination, Robinson admitted that VanNoy told him it was ultimately his decision whether to work with ACE. Robinson also clarified that ACE was interested in getting information on either Hunter or three other individuals involved in drug trafficking, and that VanNoy advised him to find three others, because "it wouldn't be wise to tell on the person who paid [his] attorney fees." *Id.* at p. 24, ln. 12-17. According to Robinson, it

was his own decision not to work with ACE.

10      Moreover, Robinson testified that VanNoy told him he was going to file a motion to change venue, but that VanNoy never filed the motion. He also claimed that he did not discuss or give VanNoy consent to withdraw the February 17, 2012 appeal.

## Charisse Robinson's Testimony

11      Charisse's testimony supported that of her husband. She offered impeachment testimony stating that VanNoy promised Robinson he would receive two years in prison or probation. However, Charisse conceded that she was not present during all of the discussions with VanNoy. Charisse also testified that VanNoy told Robinson to tell the court no one promised him anything to induce his guilty plea. In addition, she claimed that she did not tell VanNoy to withdraw the February 17, 2012 appeal.

## Attorney VanNoy's Testimony

12      Attorney VanNoy testified that he advised Robinson of his constitutional rights, informed him of the State's plea offer, discussed the maximum possible sentence, recommended the plea offer, and explained that it was Robinson's choice to either plead guilty or go to trial. According to VanNoy, Robinson asked him what kind of sentence he would receive if he accepted the plea offer, and VanNoy told him he might get between two and four years in prison. However, VanNoy also testified that this was an estimate, and that he did not promise Robinson this outcome. Rather, VanNoy testified that he told Robinson he did not know what the judge was going to do.

13 VanNoy further testified that he went over the plea form with Robinson and answered all of Robinson's questions regarding the form. He also indicated that it is not unusual for a third party to pay a client's fee, such as the case with Denny Hunter. VanNoy testified that in such a situation, his duty is to the client, and that he expressed to Hunter and Robinson that Robinson was the client. He also stated that he did not disclose a conflict of interest to Robinson, because he did not believe a conflict existed given that he had no relationship or allegiance to Hunter. As a result, VanNoy testified that he did not obtain written waiver of conflict of interest from Robinson.

14 In addition, VanNoy testified that he discussed the offer from ACE with Robinson, but did not encourage or discourage him from accepting the offer in any way. VanNoy made it clear that it was Robinson's decision not to cooperate with ACE. He further indicated that he did not file a motion to change venue because he researched the matter and believed it had no merit under Ohio law. Finally, VanNoy further explained that he withdrew the February 17, 2012 appeal because Robinson's wife told him to do so.

15 After the hearing on the petition for postconviction relief, the trial court found VanNoy's testimony more credible than the testimony of Robinson and his wife. The court also found that no conflict of interest existed with regard to the third-party payment arrangement. Accordingly, the court concluded that VanNoy did not render ineffective assistance and overruled Robinson's petition for postconviction relief.

16 Robinson now appeals from the trial court's decision overruling the petition, raising one assignment of error.

**Assignment of Error No. I**

Robinson's sole assignment of error is as follows:

THIS COURT SHOULD REVERSE THE TRIAL COURT'S DENIAL OF POST-CONVICTION RELIEF AS THE DEFENDANT HAD INEFFECTIVE LEGAL COUNSEL DUE TO CONFLICT OF INTEREST, COUNSEL'S MISCOMMUNICATION WITH DEFENDANT THAT ALTERED THE OUTCOME OF THE DEFENDANT'S PLEA AND PROCEDURAL ISSUES BY COUNSEL.

Under his single assignment of error, Robinson challenges the trial court's decision finding that defense counsel was not ineffective and overruling his petition for postconviction relief. Robinson maintains defense counsel was ineffective given that counsel: (1) had a conflict of interest with Hunter and violated Ohio Rule of Professional Conduct 1.8(f)(1) and (2) made multiple miscommunications and procedural errors.

As a preliminary matter, we note that petitions for postconviction relief are governed by R.C. 2953.21(A)(1)(a), which provides, in pertinent part, that:

Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for

relief.

{¶ 20} When a petition for postconviction relief asserts that the defendant was denied the effective assistance of counsel, such as the case here, " 'the petitioner bears the initial burden * * * to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and *also* that the defense was prejudiced by counsel's ineffectiveness.' " *State v. Hennis*, 2d Dist. Clark No. 2006 CA 56, 2007-Ohio-1670, ¶ 5, quoting *State v. Jackson*, 64 Ohio St.2d 107, 111, 413 N.E.2d 819 (1980). (Other citation omitted.)

{¶ 21} We review allegations of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to these cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*

{¶ 22} A trial court's decision granting or denying a petition for postconviction relief "should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

Conflict of Interest

23    Initially, Robinson claims that defense counsel's representation fell below an objective standard of reasonableness, because there was a conflict of interest with the third-party payer of Robinson's legal fees, Denny Hunter.   Specifically, Robinson contends that defense counsel violated Rule 1.8(f)(1) of the Ohio Rules of Professional Conduct, which requires a client's informed consent when a lawyer accepts compensation from a third party on behalf of the client.

24    Appellate courts do "not have jurisdiction over the issue of whether an attorney violated the Rules of Professional Conduct even when it is raised in the context of an appeal." (Citations omitted.) *State v. Snyder*, 6th Dist. Williams No. WM-08-004, 2009-Ohio-49, ¶ 35; *see also State ex rel. Buck v. Maloney,* 102 Ohio St.3d 250, 2004-Ohio-2590, 809 N.E.2d 20, ¶ 7-8 (the Supreme Court of Ohio has exclusive and absolute jurisdiction over the discipline of attorneys); *State v. Montgomery*, 2013-Ohio-4193, 997 N.E.2d 579, ¶ 36 (8th Dist.) (appellate courts "have no authority to address claimed violations of the Rules of Professional Conduct–that authority rests solely with the Ohio Supreme Court"); *Rice v. Lewis*, 4th Dist. Scioto No. 09CA3307, 2010-Ohio-1077, ¶ 51 (finding appellate court did not have jurisdiction over whether an attorney violated the Rules of Professional Conduct due to a conflict of interest); *State v. Frazier*, 8th Dist. Cuyahoga No. 62557, 1994 WL 50703, *9 (Feb. 17, 1994) ("Appellant may not

rely upon a rule meant as a guide for attorneys to follow to maintain the professionalism of the practice of law to support his assertion of error in the trial proceedings"). In turn, "the issue of ineffective assistance based upon a violation of the Rules of Professional Conduct * * * is outside [the appellate court's] jurisdiction * * *." *Snyder* at ¶ 51; *see also Diing v. Howes*, W.D. Michigan No. 1:09-cv-1058, 2012 WL 1413039, *10 (Mar. 29, 2012) ("Conduct mandated by the Rules of Professional Conduct clearly cannot support a claim of ineffective assistance of counsel").

25 Nevertheless, we can look to the rules of professional conduct as a guideline to assess whether an attorney renders ineffective assistance of counsel because the first component of that determination is whether counsel's conduct fell below an objective standard of reasonableness for an attorney. In this regard, "[t]hough the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides." *Missouri v. Frye*, ____U.S. ____, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012). Accordingly, we can look to ethical rules for guidance.

26 Nevertheless, we affirm the overruling of the Petition for Post-Conviction relief concerning the alleged conflict of interest because the trial court made factual findings that determined there was no conflict of interest and that trial counsel did not fail to comply with the Rules of Professional Conduct. Judgment Entry May 14, 2013 at the page docketed as 13-05-2101. This determination is supported by the record and is not an abuse of discretion.

27 We note that the appellant's brief argues that the trial attorney was required to get a "signed waiver" from his client and further directs us to Rule 1.8(f) of the Rules of Professional Conduct. That rule does not require a signed waiver. Moreover, that rule is more focused on

prohibiting business transactions with clients and the caution to be used when counsel is paid by an insurance company but represents an insured. Conversely Rule 1.7(b)(2) of the same rules requires that a client give "informed consent, confirmed in writing" before a lawyer continues representation when a conflict of interest arises. However, here the trial court determined that there was no conflict of interest. Trial counsel testified that Robinson was his client, not Hunter, and he even informed Hunter of this at the outset. Moreover, Hunter was not a client. The trial court determined "[t]he Court does not find from the testimony received in the court that there was a conflict of interest as alleged nor manifested by the representation of [trial counsel]." Judgment Entry, supra. This determination is supported by the record and is not an abuse of discretion.

28    Although we are of the opinion that Rules of Professional Conduct can be a guide for analyzing ineffective assistance of counsel, there was no violation of the rule cited in this case.

## Miscommunications and Procedural Errors

29    Next, Robinson claims that defense counsel's performance fell below an objective standard of reasonableness, because counsel made multiple miscommunications and procedural errors including: (1) failing to file a motion to change venue; (2) filing an untimely appeal and dismissing it without Robinson's consent; (3) failing to follow-up on his request for a Bill of Particulars; and (4) inducing Robinson to plead guilty by promising a maximum prison term of two years.

30    With regards to defense counsel failing to file a motion to change venue, we note that the "failure to request a change of venue is not tantamount to ineffective assistance of counsel." *State v. White*, 82 Ohio St.3d 16, 24, 693, N.E.2d 772 (1998). The decision whether

to request a change of venue is a matter of trial strategy, which is not to be second guessed by the reviewing court. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 234, citing *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 156.

31 Furthermore, the record indicates that defense counsel had no grounds for filing a motion to change venue. Pursuant to R.C. 2901.12(H)(3), venue was proper in Greene County, and there is nothing in the record indicating that Robinson would have been unable to receive a fair and impartial trial there. R.C. 2901.12(H)(3) states, in pertinent part, that:

When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

* * *

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

32 While Robinson argues that a majority of his charges arose from activity outside of Greene County, he concedes that "one minor [drug] buy" did take place within Greene County. Moreover, the record indicates that Robinson was a major marijuana trafficker in the Miami Valley, and all of his charges relate to trafficking marijuana. Therefore, his offenses were committed in furtherance of the same purpose or objective and qualify as a "course of criminal conduct." Accordingly, under R.C. 2901.12(H)(3), Robinson could be tried for all of his

offenses in any county in which any one of his offenses occurred. Since Robinson conceded that his charges were partially based on a minor drug buy in Greene County, venue was proper there. As a result, defense counsel's decision to forgo filing a motion to change venue does not fall below an objective standard of reasonableness and, therefore, cannot qualify as ineffective assistance of counsel.

33      Next, we fail to see how defense counsel's act of withdrawing the alleged untimely appeal qualifies as ineffective assistance. Even if we were to find that this conduct fell below an objective standard of reasonableness, Robinson has not demonstrated how it prejudiced him. As noted earlier, defense counsel filed and withdrew the appeal after Robinson had already pled guilty and received his sentence. As a result, there is no reasonable probability that the untimeliness and subsequent withdraw of the appeal had any bearing on the outcome of Robinson's case. Furthermore, if Robinson in fact wanted to go forward with the withdrawn appeal, he had the option of filing a motion requesting permission to file a delayed appeal pursuant to App.R. 5, which he did not do. *See State v. Bobo*, 2d Dist. Greene No. 92 CA 51, 1993 WL 155627, *8 (May 13, 1993). Accordingly, Robinson's argument concerning the untimely, withdrawn appeal has no merit.

34      Likewise, Robinson's claim that defense counsel provided ineffective assistance in failing to follow-up on his request for a Bill of Particulars is also unpersuasive. Once again, even if we assume this conduct fell below an objective standard of reasonableness, Robinson has failed to demonstrate how it prejudiced him. There is nothing in the record indicating that Robinson lacked knowledge of the nature and cause of each charge brought against him. In fact, Robinson testified at the plea hearing that he discussed the nature of his charges with defense

counsel, understood the charged offenses, and reviewed the evidence that sets forth the facts on which his charges are based. Trans. (Nov. 3, 2011), p. 4, ln. 9-20. Therefore, we fail to see how acquiring a Bill of Particulars would have assisted Robinson's defense or changed the outcome of his case. *See State v. Smith*, 2d Dist. Montgomery No. 19370, 2003-Ohio-903, ¶ 17 (finding defense counsel's failure to compel more responsive Bill of Particulars did not constitute ineffective assistance of counsel due to lack of prejudice). Accordingly, Robinson's argument with respect to the Bill of Particulars has no merit.

35    In his final claim, Robinson argues that defense counsel was ineffective in inducing him to plead guilty by promising him a maximum prison term of two years. The trial court, however, found defense counsel's testimony more credible than the testimony of Robinson and his wife, and ultimately determined that defense counsel did not engage in such conduct.

*36*    During an evidentiary hearing on a petition for postconviction relief, the trial court serves as the trier of fact and is charged with determining the credibility of the witnesses. *State v. Williams*, 11th Dist. Trumbull No. 97-T-0148, 1998 WL 964576, *5 (Dec. 24, 1998), citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). After such a hearing, "a reviewing court should not overrule [the trial court's] findings if they are supported by competent and credible evidence unless it abused its discretion." *State v. Lallathin*, 7th Dist. Noble No. 03 NO 312, 2004-Ohio-7066, ¶ 24, citing *State v. Mitchell*, 53 Ohio App.3d 117, 119, 559 N.E.2d 1370 (8th Dist. 1988). In this case, the trial court was in the best position to judge the credibility of the witnesses and the court's findings were supported by the transcripts of the plea hearing and the hearing on the petition for postconviction relief. Therefore, we conclude that the trial court's decision was not an abuse of discretion and that Robinson's final claim has no merit.

Based on the foregoing, we conclude that Robinson has failed to prove that he received ineffective assistance of counsel. We further conclude that the trial court did not abuse its discretion in denying Robinson's petition for postconviction relief. Accordingly, Robinson's sole assignment of error is overruled.

## Conclusion

Having overruled Appellant Kenneth Robinson's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., dissenting:

I disagree. In *Wood v. Georgia*, 450 U.S. 261, 268-269, 101 S.Ct. 1097, 1101-1102, 67 L.Ed.2d 220 (1981) (footnotes omitted), the Supreme Court emphasized that there are "inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing his client from offering testimony against his former employer or from taking other actions contrary to the employer's interest."

Although I would not find, on this record, evidence of an actual obstruction of securing leniency for Robinson by counsel, in my view, the record establishes an actual conflict which was not discerned by counsel which constitutes prejudice. The first command of the conflict rules is to prevent the conflict from ever arising. Doubts should be resolved in favor of

avoiding a conflict by declining representation or discontinuing it upon learning of the conflict. This situation is not analogous to the benevolent grandmother who pays a juvenile's attorney's fees when he is charged with an act of delinquency. The grandmother acts out of love and has the child's best interests at heart. Thus, such an analogy by counsel himself illustrates the lack of discernment required herein.

41      On the contrary, the third party payer who is the alleged kingpin may have entirely different motivations including, but not limited to, 1) silencing the accused, 2) compensating the accused for his collaboration in crime, and/or 3) fulfilling an agreement as part of the drug enterprise to seek and pay for counsel of the kingpin's choice. See generally, Orentlicher, Fee Payments to Criminal Defense Lawyers from Third Parties: Revisiting *United States v. Hodge and Zweig*, 69 Fordham L. Rev. 1083 (2000).

42      Robinson had a constitutional right to the services of an attorney devoted solely to his interests even where there was no thought of or intent to do wrong. I note the trial court found no conflict of interest, but in my view, this is contrary to the record which establishes counsel learned upon obtaining discovery that Robinson had been talking to the Task Force about Hunter, and the State provided an option to Robinson to turn on Hunter before the abandoned motion to suppress, as illustrated by the following testimony of counsel:

> Q:  Did you go over any conflict of interest with Mr. Robinson?
>
> A:  Well, at the time that Mr. Robinson and I engaged, I was unaware of any conflict of interest. When I realized there was a problem was when I read the discovery and I see all these statements that Mr. Robinson had made with respect to Dennis

Hunter who is the person who provided the payment for the representation.

Q: Mmm-hmm.

A: It still wasn't a conflict to me because I have no allegiance to Mr. Hunter. In fact, I wasn't even - I wasn't introduced to Mr. Hunter. I was introduced to Mr. Hunter by my former law partner.

. . .

Q: Mmm-hmm.

A: So my relationship - the only relationship I really had was with Mr. Robinson. He was the client.

Q: Okay. So you never had a real relationship with Mr. Hunter?

A: I didn't have a relationship. I had heard the name before, but I didn't have a - I didn't have a relationship with Mr. Hunter.

Q: And you didn't feel an obligation to represent Mr. Hunter's penal interest over Robinson's penal interest?

A: Not at all. And, in fact, I expressed that, that Mr. Robinson is my client and I felt like that from the very - there was never an issue.

Q: So you expressed that to Mr. Hunter?

A: I expressed that to Mr. Hunter.

Q: And so there was no need to express that to Mr. Robinson?

A: Because there was no issue. And he expressed to me, Mr.

Hunter said, "I understand that. Mr. Robinson is the client."

Q: Okay. Did you talk about a deal with the Task Force - potential deal with the Task force that may have been floated prior to the motion to suppress hearing?

A: I think the Task Force may have wanted to have additional discussions with Mr. Robinson. We talked about that. We talked about, you know, what that looked like for him.

Q: You said that you had discussions with Mr. Robinson about turning on Mr. Hunter based upon the request of the Task Force; is that correct?

A: Yes, sir.

43    The above exchange, in my view, also illustrates the fact that although counsel made clear to Hunter where his loyalties lied, the same was not evident to Robinson. Although Hunter was not a client or co-defendant, he did have a third-party payer relationship with counsel as he was paying the freight of $15,000.00 for representation. Accordingly, a financial interest was established between counsel and Hunter. The reality is that this creates an economic incentive, even if subconscious, to ensure that Robinson not do anything to compromise the interests of Hunter.

44    Because counsel labored under an actual conflict of interest, I would conclude prejudice is not only presumed but established. I would reverse and remand.

. . . . . . . . . .

Copies mailed to:

Elizabeth A. Ellis
Ronald P. Keller
Hon. Stephen Wolaver